IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESUS ALANIZ,

      Plaintiff,

vs.                                                  Civ. No. 05- 353ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed September 12, 2005. Docket No. 13. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken and will be granted.

### I.  PROCEDURAL RECORD

Plaintiff, Jesus Alaniz, filed an application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on June 26, 2002. Tr. 49, 252. He alleged that he was disabled since December 30, 2001 due to a herniated disc in his back and pain. Tr. 65-66, 252. His application was denied at the initial and reconsideration level.

The ALJ conducted a hearing on July 20, 2004. Tr. 264. At the hearing, Plaintiff was represented by a non-attorney. On August 26, 2004, the ALJ issued an unfavorable decision. The ALJ found that the Plaintiff had the residual functional capacity to perform a broad range of sedentary

work and pursuant to the "grids" found that Plaintiff was not disabled.  Tr. 25.  This decision is the final decision of the Commissioner.  20 C.F.R. § 404.984(a) & (d).  Plaintiff filed his Complaint for judicial review of the ALJ's decision on March 30, 2005.

Plaintiff was born on April 30, 1974.  He has past work experience as a field laborer, completed the ninth grade in school and does not speak English.  Tr. 67, 72, and 183.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*.

### III.  MEDICAL HISTORY

Plaintiff injured his back at home in approximately 2001.  Tr. 134, 153.  An MRI taken on May 10, 2002 showed a large central disc protrusion at L4/5 impressing upon the anterior thecal sac. The radiologist also commented "I see no significant narrowing of the neuroforamen to suggest impingement upon exiting nerve roots."  Tr. 132. In early 2002, his physicians prescribed medication, Flexeril, for his pain.  Tr. 133-34.  Plaintiff told his physician that the Flexeril sedated him excessively. His treating physician, Joseph Ford, M.D. referred him to an orthopedic specialist, Cesar Velarde, M.D. *Id.*

Plaintiff saw Dr. Velarde in September of 2002.  Tr. 153.  Dr. Velarde noted that Plaintiff's complaints seemed reliable, "although he seems to be a little bit depressed."  *Id*.  Dr. Velarde found that Plaintiff had normal strength and normal deep tendon reflexes, but he did have some difficulty standing up and sitting down.  *Id*.  Dr. Velarde diagnosed Plaintiff with discogenic[1] pain syndrome

---

[1]Discogenic is defined as "caused by the derangement of an intervertebral disk."  *Dorland's Pocket Medical Dictionary*, 23rd ed., 208.

and recommended epidural steroid injections, which he performed in October of 2002. He also noted that Plaintiff would benefit from anti-neuropathic medications and muscle relaxants. Tr. 154.

In April of 2003, Plaintiff was referred to Bruce D. San Filippo, M.D, a neurosurgeon. He reviewed the MRI scan of May of 2002 and noted that Plaintiff had a large central disc protrusion at L4-5. Tr. 170. He stated that if this persists Plaintiff may be a candidate for surgery. Tr. 171.

After a motor vehicle accident in June of 2003, Edwin L. Kennedy, M.D. found that Plaintiff had cervical, dorsal and lumbar strain, non-radicular and prescribed physical therapy. Tr. 190-191. The record also contains the following results of an MRI taken on July 22, 2003.

> Disc degenerative changes L4-L5 with posterior midline bulge of disc material causing mild spinal stenosis, AP diameter 8mm.
> The L-5 nerve roots do not appear compressed, though with spinal stenosis, there is probably some impingement.
> Bilateral facet hypertrophy L2-L3 without impingement or lateral recess narrowing.

Tr. 193.

A state agency physician reviewed the record and found that Plaintiff could perform sedentary to light work activity with occasional postural limitations. Tr. 196.

The record also contains medical records concerning Plaintiff's mental health. Plaintiff was treated by Jorge Vargas, M.D., a psychiatrist, during 2002 and 2003. Plaintiff reported to Dr. Vargas that he felt depressed, tired, without energy and that he had trouble sleeping. Tr. 184-85. During the therapy sessions, Dr. Vargas noted that Plaintiff suffered sleep problems, increased anxiety, and depression. Tr. 175-77. Dr. Vargas prescribed Celexa[2] and Seroquel.[3] These drugs had varying

---

[2]A selective serotonin reuptake inhibitor [SSRI], which is used to treat depression and anxiety. H. Winter Griffth, M.D., *Complete Guide to Prescription & Nonprescription Drugs* 746 (2003 ed.).

[3]An antipsychotic drug. *Id.* at 712.

4

degrees of success on Plaintiff's symptoms of anxiety and depression. On November 21, 2002, the record shows that Plaintiff had "[w]orsening depressive symptoms." Tr. 177. On December 18, 2002, it was noted that there was no change in depression and anxiety from an increase in Celexa. In January of 2003 Dr. Vargas noted that Plaintiff's anxiety was resolved and there was mild improvement in depression. Tr. 176. On March 17, 2003, Dr. Vargas found that Plaintiff's depression improved and his anxiety was under good control. Tr. 175. On June 27, 2003, Plaintiff's depression and anxiety was worsening since his recent motor vehicle accident.

Plaintiff also received treatment for his depression at the Esperanza Counseling and Recovery Clinic from January of 2003 through May of 2004. Tr. 238-50. These records demonstrate that Plaintiff continued to be depressed. On October 26, 2003, Homer Avalos, Ph.D. diagnosed the Plaintiff with major depression, acute stress disorder and post traumatic stress disorder. Tr. 246. He opined that Plaintiff had a Global Assessment of Functioning ("GAF") of 54.[4] He recommended that the Plaintiff "continue treatment for indefinite period of time." Tr. 221.

A state agency physician completed the Psychiatric Review Technique Form. Upon review of the record the physician notes that "there is no indication of thought disorder or severe cognitive limitation. Admits to good response to medication." Tr. 214. Although the state agency physician diagnosed depression and affective disorder he indicated the impairments were not severe. Tr. 202, 214.

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred in failing to develop the record, finding at step 2 that

---

[4]The GAF rates an individuals "psychological, social, and occupational functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorder* 25-30 (4th ed.1994). A score of 54 indicates moderate symptoms indicating difficulty in social, occupation, or school functioning, such as having conflicts with peers or co-workers. *Id.* at 32.

Plaintiff's mental impairments were not severe and applying the "grids."

Duty to develop the record.

Plaintiff asserts that the ALJ failed to develop the record. The ALJ has a basic duty of inquiry. "It is also the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits..." *Sims v. Apfel*, 530 U.S. 130 (2000). In this matter the issue is whether the ALJ asked sufficient questions to ascertain "(1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on claimant's daily routine and activities." *Id*. at 1375. A review of the transcript of the hearing shows that the ALJ failed to ask sufficient questions to fulfill his duty to develop the record.[5] Tr. 266-272.

The transcript reveals that the hearing lasted only a few minutes. Tr. 266-73. The ALJ did not ask the Plaintiff any questions about how his anxiety and depression affect the activities that relate to his ability to work. 20 C.F.R. §§ 404.1520a; 416.920a. Likewise, the following questions which were asked by Plaintiff's non-attorney representative were insufficient to develop the record.

```
     Q     Looking at your medical records and you are (INAUDIBLE) counseling.  Is that
correct?
     A     Yes.
     Q     Okay.  And what kind of treatment are you getting there?  What's that for?
     A     I – they're helping me with the anxieties that I have.  He's the one that sent me with
Dr. Vargas. [phonetic]
     Q     Okay.  Are you taking any mediation for this anxiety?
     A     Yes.
     Q     Okay.  And is it helping you?
     A     A little.
```

---

[5]Defendant's assertion that the ALJ did not have a duty to develop the record regarding Plaintiff's mental impairment because Plaintiff did not allege a mental impairment in his applications or when completing disability report forms is without merit. *Hawkins v. Chater*, 113 F.3d 1162, 1168-69 (10th Cir. 1997) (even if there is no allegation of impairment in the application documents, if evidence thereof is submitted or elicited during the hearing, ALJ has a duty to develop the record concerning that impairment).

```
Q      Okay. And how long have you been treated by [INAUDIBLE] Clinic?
A      I think it's been two years.
Q      Two years?
A      Yes.
Q      Okay.  And Dr. [INAUDIBLE] Ph.D., is that the doctor that's treating you?
A      Yes.
Q      Okay. There's a note here that he's treating you for depression. Is that true?
A      Yes.
Q      And are you taking medication for depression?
A.     Yes.
Q      Okay. Is that helping you a little?
A      Yes.
Q      Okay. And are you having trouble sleeping?
A      Sometimes I sleep and sometimes I don't.
Q      What's the problem? What keeps you from sleeping?
A      The problem is that I'm sick and the bills.
Q      Okay. And are you taking medication to help you sleep?
A      Yes.
```

Tr. Tr. 271-72.

The ALJ should have asked some follow up questions concerning the frequency, severity and duration of Plaintiff's anxiety and depression and his ability to function. His failure to do so requires a remand.

Step 2.

Plaintiff also asserts that the ALJ erred in finding at step 2 that Plaintiff's mental impairment were not severe. The ALJ found that the "record clearly established that the claimant's depression has no more than a minimal effect on his ability to perform basic work-related mental activities." Tr. 21.

At step two, the claimant must show that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities that pertain to mental impairments include: (1) understanding,

7

carrying out, and remembering simple instructions, (2) use of judgment, (3) responding appropriately to supervision, and (4) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). At step two, the ALJ must apply a *de minimus* standard to determine whether an impairment significantly limits the claimant's ability to do basic work activity. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Only the most trivial impairment is not considered severe. *Taylor v. Bowen*, 738 F. Supp. 436, 440 (D. Kan. 1987). If the evidence is unclear as to whether the impairment is severe or not the sequential evaluation process continues. SSR 85-28, 1985 WL 56856. Step two is "an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Daley v. Barnhart*, 2003 U.S. Dist. LEXIS 18011 (D. Kan. 2003) citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 n.1 (6th Cir. 1985). At this step, the Commissioner relies only on the medical evidence to determine whether an impairment is severe. *Id.*

In this matter, the Plaintiff sought treatment for anxiety and depression, was diagnosed with anxiety and depression and was given prescription medication for his anxiety and depression that worked with varying success. Dr. Avalos diagnosed the Plaintiff with major depression and acute stress disorder and opined that Plaintiff had a GAF of 54.[6] This indicates that Plaintiff has moderate symptoms in functioning. The records indicate he had difficulty in concentrating and had trouble sleeping. Tr. Tr. 240-49. The Court finds that the ALJ's finding that Plaintiff's mental impairment is not severe is not supported by the substantial evidence. This finding also requires a remand.

"Grids."

---

[6] "Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work...A GAF score of fifty or less, however, does suggest an inability to keep a job. (citation omitted). In a case like this one, decided at step two, the GAF score should not have been ignored." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004).

8

Plaintiff asserts that the ALJ erred in relying on the "grids" in finding that Plaintiff was not disabled. Tr. 25. The Medical-Vocational Guidelines ("grids") are used at step five to determine whether a disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The "grids" reflect the existence of jobs in the national economy at various residual functional capacity levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§ 404.1566(d); 416 966.(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The "grids" assume that the claimant's sole limitation is lack of strength; i.e. an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App.2 2, § 2000(e)(2).

In this matter, the ALJ applied 201.23 which directs a finding of not disabled. Tr. 24. Plaintiff asserts that the ALJ erred in applying the "grids" because, *inter alia*, the ALJ found that Plaintiff had the following postural limitations: occasional climbing, balancing, bending, stooping, kneeling, crouching and crawling. He was also limited in his ability to push or pull with his lower extremities. Tr. 24. Plaintiff is correct. When postural limitations are found, the "grids" alone cannot be used to determine Plaintiff's ability to perform alternate work at step five. *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992), citing 20 C.F.R. § 404.1545(d).[7] Vocational expert testimony is required to determine "whether jobs exist for someone with the claimant's precise disabilities." *Id*. at 1333 quoting *Ash v.Sullivan*, 748 F. Supp 804, 809 (D. Kan.. 1990).

---

[7]Defendant's reliance on SSR 85-15 is misplaced. This Program Policy Statement applies to "decisions concerning persons who have only a nonexertional limitation..."1985 WL 56857. Further, Defendant did not fully state what SSR 96-9p explains as to the postural limitation of balancing. SSR 96-9p states in part that "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. Consultation with a vocational resource may be appropriate in some cases."1996 WL 374185 *7.

Finally, the court notes that application of the "grids" is not proper when Plaintiff has a severe mental impairment. *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991) ("Resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as...mental impairments.")

For these reasons the ALJ erred in relying on the "grids" in finding that the Plaintiff was not disabled.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand the Administrative Decision is granted for proceedings consistent with this Memorandum Opinion and Order.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**
**(sitting by designation)**